UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>      v.<br><br>GEORGE PETERSON,<br><br>                Defendant. | NO. CV-11-5137-EFS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR FAILURE TO STATE A CLAIM AND GRANTING THE UNITED STATES LEAVE TO FILE AN AMENDED COMPLAINT** |

In this civil lawsuit, the United States alleges Kennewick Industrial & Electrical Supply Inc.'s ("KIE") Vice President George Peterson knew that KIE sold to U.S. Department of Energy (DOE) prime contractors 1) products that KIE does not typically sell and 2) KIE's standard products at a significant price markup, and Mr. Peterson retained the financial benefit from these fraudulent schemes. Before the Court is whether the Complaint's, ECF No. 1, fraud-based claims satisfy Federal Rule of Civil Procedure 9(b)'s particularity requirement. ECF No. 4. After reviewing the record, arguments of counsel, and relevant legal authority, the Court grants in part and denies in part Mr. Peterson's motion to dismiss, ECF No. 4, and grants the United States leave to amend its Complaint.

///

ORDER ~ 1

**A. Background**[1]

On September 30, 2011, the United States filed the instant Complaint asserting that Mr. Peterson violated the Anti-Kickback Act and the False Claims Act and was unjustly enriched by participating in the "KIE-Detloff Kickback Scheme" and the "KIE-Zuniga Fraud Scheme." ECF No. 1.

The "KIE-Detloff Kickback Scheme" alleges that a KIE employee, Martin Perez, agreed with a Department of Energy (DOE) prime contractor's material coordinator, Gregory Detloff, to purchase products from Mr. Detloff's wife's company, Detloff Industrial, at significantly inflated prices. *Id.* ¶¶ 4.1-4.23. Mr. Detloff agreed in turn to buy materials for DOE from KIE at an inflated price. *Id.* ¶ 4.24. This KIE-Detloff Kickback Scheme allowed the Detloffs to earn income from Ms. Detloff's business without revealing to DOE the conflict of interest that Mr. Detloff had, and allowed KIE to gain more business at an excessive profit. *Id.* ¶¶ 4.25-4.26. These personal benefits came at the United States' expense. Mr. Peterson, who supervised and oversaw Mr. Perez' sales, learned of the KIE-Detloff Kickback Scheme from Mr. Perez, facilitated and encouraged this scheme, and retained profits obtained from this scheme. *Id.* ¶¶ 4.27 & 4.29.

The "KIE-Zuniga Fraud Scheme" alleges that Suzie Zuniga, another material coordinator for a DOE prime contractor, worked with KIE employees, Mr. Perez, Michele Young, and Tina Munson, to purchase

---

[1] The "background" section is based on the Complaint's, ECF No. 1, factual allegations. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

ORDER * 2

personal items, such as IPods, notebook computers, and digital cameras, through KIE, even though KIE, as an electrical, plumbing, irrigation, cabinet, and decorative lighting store, did not ordinarily sell such items. *Id.* ¶¶ 4.47-4.48 & 4.50-4.52. Mr. Peterson "directly facilitated particularly high dollar purchases and sales made through KIE pursuant to" this scheme. *Id.* ¶ 4.54. For the lower-priced sales made through the KIE-Zuniga Fraud Scheme, Mr. Peterson knew or acted with deliberate ignorance thereby allowing hundreds of thousands of dollars in personal electronics and household appliances to be purchased by Ms. Zuniga for her own and others' personal uses. *Id.* ¶¶ 4.56-4.58. Mr. Peterson retained the financial benefits obtained from this fraudulent scheme.

On December 2, 2011, Mr. Peterson filed the instant dismissal motion. ECF No. 4. Briefing followed, and oral argument was heard on February 1, 2012. At the hearing, Tyler Tornabene appeared on the United States' behalf, and John Tollefsen and Frank Homsher appeared on Mr. Peterson's behalf.

**B.   Standard**

When assessing whether a complaint survives a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss for failure to state a claim, the court reads the entire complaint in the light most favorable to the plaintiff. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003). Federal Rule of Civil Procedure 8(a) typically sets forth the pleading requirements for a complaint, i.e., the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).


Yet, when the complaint alleges fraud, Rule 9(b) requires the complaint to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Rule 9(b), however, permits "[m]alice, intent, knowledge, and other conditions of a person's mind" to be alleged generally, or in accordance with Rule 8. *Id.* Therefore, Rule 9(b) only requires the circumstances of the fraud to be stated with particularity, and all other allegations need only satisfy Rule 8(a). *United States v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011).

**C. Authority and Analysis**

Mr. Peterson argues the Complaint's claims, all of which sound in fraud, fail to satisfy Rule 9(b)'s particularity requirement. The United States does not dispute that its False Claims Act (FCA), Anti-Kickback Act, and unjust enrichment claims sound in fraud; however, the United States contends the Complaint's allegations satisfy Rule 9(b). Because the parties focus on the FCA claims, the Court begins its analysis with these claims.

1. <u>FCA</u>

The FCA extends liability to one who "knowingly presents, or causes to be presented, . . . a false or fraudulent claim" that is material to "payment or approval" by the U.S. government. 31 U.S.C. § 3729(a)(1) (2009) (current version at 31 U.S.C. § 3729(a)(1)(A)). *See Iqbal*, 129 S. Ct. at 1949 (directing court, when analyzing a Rule 12(b)(6) motion, to first identify the elements of the asserted claim based on statute or case law). Accordingly, the essential elements of an FCA claim are: 1) a false statement or fraudulent course of conduct, 2) made with requisite scienter, 3) that caused (i.e., was material), 4) the government to pay

out money or forfeit monies due. *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006). To comply with Rule 9(b) when pleading an FCA fraudulent course-of-conduct claim, the complaint is to 1) specifically identify the details of the fraudulent scheme to present false claims and 2) either a) specifically identify each statement's falsity or b) use representative examples of presented false statements that lead to a strong inference that other false claims were presented. *Ebeid v. Lungwitz*, 616 F.3d 993, 998-99 (9th Cir. 2010) (adopting *United States ex rel. Grubbs* v. *Kannaganti* ("*Grubbs*"), 565 F.3d 180, 190 (5th Cir. 2009)).

    Mr. Peterson maintains that the latter "example" approach may not be utilized by the United States here because it is in possession of the allegedly submitted false claims and therefore Rule 9(b)'s particularity requirement must be strictly enforced. The Court agrees that, when the United States brings an FCA claim, the Court should err on the side of requiring the United States to plead more particulars than less regarding the information that is in its possession. *See United States ex rel. Duxbury v. Ortho Biotech Prods., L.P.*, 578 F.3d 13, 29 (1st Cir. 2009) (distinguishing different types of FCA claims under the pre-2009 version of FCA). Yet, an FCA fraudulent-presentment claim does not require proof of the exact content of the presented document(s) but only that the presented document(s) contain(s) false information. *See Ebeid*, 616 F.3d at 998-99; *Grubbs*, 565 F.3d at 189 (It is "adequate to allege that a false claim was knowingly presented regardless of its exact amount; the contents of the [submission] are less significant because a complaint need not allege that the [g]overnment relied on or was damaged by the

ORDER * 5

false claim."). Accordingly, the Court does not require the Complaint to allege in detail every false statement presented.

Nonetheless, accepting the Complaint's factual allegations as true, the Complaint's FCA claims fail to satisfy Rule 9(b). Although the Complaint's factual allegations relating to the fraudulent schemes utilized are detailed, its factual allegations relating to Mr. Peterson's involvement in the fraudulent schemes are not detailed. The Complaint's allegations that Mr. Peterson "had supervisory and oversight authority over KIE employees who made purchases and sales related to providing materials to" DOE prime contractors and "made or facilitated purchases and sales related to providing materials to" DOE prime contractors are insufficient to satisfy Rule 9(b)'s particularity requirement because there is insufficient detail of Mr. Peterson's involvement in the fraudulent schemes. ECF No. 1 ¶¶ 4.4 & 4.5; *see Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (Rule 9(b) requires a plaintiff to "inform each defendant separately of the allegations surrounding his alleged participation in the fraud." (internal citation and quotation omitted)). The Complaint must detail what Mr. Peterson's role was in these fraudulent schemes, such as how he made or facilitated the presentment of false claims, and how he supervised or oversaw the KIE employees at issue. Given the detailed allegations relating to the two fraudulent schemes, the Complaint need not allege every single fraudulently presented claim to the prime contractors, but the Complaint must provide Mr. Peterson with more information about when, where, and how he participated in or facilitated these schemes, why his conduct violates the FCA, and what benefit he received from these schemes. *See*

ORDER ~ 6

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (To state with particularity the circumstances constituting fraud, the plaintiff must include "the who, what, when, where, and how of the misconduct charged." (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). By alleging this required information, the Complaint will allege sufficient "reliable indicia that lead to a strong inference that [false] claims were actually submitted." *Ebeid*, 616 F.3d at 999 (quoting *Grubbs*, 565 F.3d at 190).

    Mr. Peterson also argues that the Complaint's allegations relating to Mr. Peterson's scienter are deficient. The Court disagrees. The FCA defines "knowing" and "knowingly" as a person who "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b) (2009) (current version at 31 U.S.C. § 3729(b)(1)); *see also Corinthian Colls.*, 655 F.3d at 996 (applying the FCA's knowledge requirement). The FCA does not require "proof of specific intent to defraud." *Id.* The Complaint's conclusory scienter allegations are sufficient to satisfy Rule 8(a), i.e., "Peterson had actual knowledge, or acted with deliberate ignorance or reckless disregard, of the substantial markups Perez was paying to Becky Detloff and Detloff Industrial at the direction of Detloff." ECF No. 1 ¶ 4.29, *see also* ¶¶ 4.31, 4.34, 4.36, 4.39, 4.56, 4.57, & 4.59.

    For the above-given reasons, as to the FCA claims, Mr. Peterson's motion to dismiss is granted and denied in part.

///

    2.    <u>Anti-Kickback Act</u>

ORDER \* 7

The Complaint also alleges Mr. Peterson violated the Anti-Kickback Act, 41 U.S.C. § 53,[2] by participating in the KIE-Detloff Kickback Scheme. The Anti-Kickback Act prohibits 1) "provid[ing], attempt[ing] to provide, or offer[ing] to provide a kickback," and 2) "solicit[ing], accept[ing], or attempt[ing] to accept a kickback." *Id.* A "kickback" is defined as:

> any money, fee, commission, credit, gift, gratuity, thing of value, or compensation of any kind that is provided to a prime contractor, prime contractor employee, subcontractor, or subcontractor employee to improperly obtain or reward favorable treatment in connection with a prime contract or a subcontract relating to a prime contract.

41 U.S.C § 52 (2011) (current version at 42 U.S.C. § 8701(2)).

As explained above, the Court finds the Complaint fails to allege with sufficient particularity Mr. Peterson's involvement in the KIE-Detloff Kickback Scheme. Therefore, the Complaint must be amended to identify the circumstances constituting fraud such as when and how Mr. Peterson was involved in the kickback scheme, how his supervision of Mr. Perez facilitated the scheme, and what the improper kickback(s) were. Mr. Peterson's motion is granted in this regard.

3.  Unjust Enrichment

Lastly, the Complaint asserts an unjust enrichment claim, alleging that Mr. Peterson has been unjustly enriched by receiving and continuing "to maintain control over monies" to which he was not entitled to retain to the United States' detriment. ECF No. 1 ¶ 8.2. Unjust enrichment has three elements: 1) one party conferred a benefit on the other party, 2)

---

[2] After January 4, 2011, the Anti-Kickback Act is now codified at 41 U.S.C. § 8702.

ORDER * 8

the recipient must appreciate or know of the benefit, and 3) the recipient "must accept or retain the benefit under circumstances that make it inequitable for [it] . . . to retain the benefit without paying its value." *Dragt v. Dragt/DeTray, LLC*, 139 Wn. App. 560, 576 (2007).

The United States can prevail on its unjust enrichment claim by showing that Mr. Peterson knowingly inequitably retained a benefit at the U.S. government's detriment as a result of 1) his own conduct and/or 2) the KIE employees' conduct. Although above the Court finds the Complaint's fraud-sounding circumstances relating to Mr. Peterson are insufficient, the unjust enrichment claim survives this motion to dismiss because the alleged facts relating to the wrongdoing engaged in by KIE employees are sufficiently detailed. Accordingly, Mr. Peterson's motion to dismiss the unjust enrichment claim is denied.

**D.  Conclusion**

As set forth above, the Court finds the FCA and Anti-KickBack Act claims do not satisfy Rule 9(b)'s particularity requirement. Accordingly, the Court grants in part Mr. Peterson's Rule 12(b)(6) motion.[3] The United States requests leave to amend, and the Court finds justice requires that leave be given. *See* Fed. R. Civ. P. 15(a)(2) (requiring leave to amend to be "freely give[n]" "when justice so requires"); *see also Corinthian Colls.*, 655 F.3d at 995 (granting leave

---

[3] Because the Court grants Mr. Peterson's Rule 12(b)(6) motion, the Court need not analyze Mr. Peterson's alternative Rule 12(e) "more definite statement" request.

ORDER * 9

to amend). The United States is to file its amended complaint by February 17, 2012.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's FRCP 12(b)(6) Motion for Failure to State a Claim Upon Which Relief Can Be Granted and FRCP 12(e) Motion to Make Definite and Certain, **ECF No. 4**, is **GRANTED IN PART** (FCA and Anti-Kickback Act) **and DENIED** (unjust enrichment) **IN PART.**

2. The United States may file an amended complaint no later than **February 17, 2012.**

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and to provide copies to counsel.

**DATED** this  1st   day of February 2012.


                          s/Edward F. Shea
                          EDWARD F. SHEA
                    United States District Judge

Q:\Civil\2011\5137.dismiss.amend.lc1.wpd

ORDER * 10